NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-774                                      Appeals Court


COMMONWEALTH  vs.  GABRIEL COLON.


No. 13-P-774.

Hampden.     December 9, 2014. - May 22, 2015.

Present:  Cypher, Wolohojian, & Blake, JJ.


Firearms.  Practice, Criminal, Motion to suppress.  Search and
     Seizure, Reasonable suspicion.  Constitutional Law, Search
     and seizure, Reasonable suspicion.



Indictments found and returned in the Superior Court
Department on October 18, 2011.

A pretrial motion to suppress evidence was heard by C.
Jeffrey Kinder, J., and the cases were heard by Cornelius J.
Moriarty, II, J.


Elaine Fronhofer for the defendant.
Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.


CYPHER, J.  The defendant, Gabriel Colon, was convicted

after a jury-waived trial of unlawful possession of a firearm,

possession of a defaced firearm, and unlawful possession of

ammunition.[1]  On appeal from the ensuing judgments, he argues

error in an order denying his motion to suppress evidence,

contending that the judge erred when he found that the defendant

was lawfully seized.  Only one witness testified at the hearing

on the motion to suppress, Detective William Delgado.  The

salient facts are not in dispute.[2]  We accept the motion judge's

findings of fact unless they are clearly erroneous, but we

undertake an independent review of the application of the

constitutional principles.  Commonwealth v. Hoose, 467 Mass.

395, 399-400 (2014).  The motion judge found the following

facts, which we recite verbatim.

> "At approximately 5:30 P.M. on September 18, 2011, Holyoke
> Police Detective William Delgado received a telephone call
> from a friend, Manuel Alicea.  Alicea informed Detective
> Delgado that five Hispanic males were loitering in front of
> Manny's Market near the intersection of Sergeant and Walnut
> Streets in Holyoke.  Alicea, the owner of the property,
> asked Detective Delgado to respond to address the problem.
>
> "Manny's Market is in a high crime area, well known to
> Detective Delgado for drug dealing, firearms offenses and
> shootings.  A Holyoke [p]olice [o]fficer had been killed
> recently in that area.
>
> "Detective Delgado had been a Holyoke police officer
> for ten years.  At the time, he was assigned to the Holyoke
> [p]olice [d]epartment [n]arcotics and [v]ice [u]nit and

---

[1] Various other charges were dismissed or nolle prosequied.

[2] The judge found that police officers arrived within fifteen minutes of the request that gave rise to the circumstances of this case.  The record shows, however, that the officers arrived two hours later.  The defendant notes some additional minor factual errors in the findings but concedes that they are not relevant to the issue on appeal.

also the Western Massachusetts [g]ang [t]ask [f]orce.  He was familiar with firearms, having made firearms arrests approximately [forty] to [fifty] times.  Many of those arrests involved illegal possession of firearms on the street.

"At approximately 5:45 P.M., Detective Delgado responded to Manny's Market with other officers in an unmarked vehicle.  All of the officers were in plain clothes, but wore their police badges around their neck[s].  Upon arrival, Detective Delgado observed five Hispanic males standing on the sidewalk in front of Manny's Market.  There were no other persons in the area.  Detective Delgado recognized one of the men, Jeffrey Rosario, from past arrests for drug offenses and home invasion.  Detective Delgado exited his police vehicle and moved toward the group of men for the purpose of telling them to move along.  As he did so, he noticed one of the men he did not recognize, later identified as Colon, stare at him in a manner he described as nervous.  After Detective Delgado and the other police officers identified themselves and asked the men to move along, Colon began to walk away at a fast pace repeatedly looking back toward Detective Delgado.  Colon was wearing a loose shirt untucked.  From a vantage point of approximately [ten] feet away, Detective Delgado observed a bulge on Colon's right hip underneath his shirt.  He described the bulge as a few inches in size.  Based on his training and experience, Detective Delgado believed the bulge was consistent with a firearm, both in size and location.  Soon after Colon began to walk away at a fast clip, Detective Delgado observed him reach to the bulge with his right hand and make what Detective Delgado described as an 'adjustment' with his hand.  At that point, Detective Delgado ordered him to stop.

"After Detective Delgado's directive to stop, Colon began to run.  Detective Delgado gave chase north on Walnut, west into a dirt lot, down an alley and onto Pine Street.  On Pine Street Detective Delgado observed Colon reach toward the bulge, pull out what appeared to be a firearm and throw it over a fence.  [Detective] Delgado stopped and retrieved the firearm, a silver .380 caliber semi-automatic handgun with a black handle, approximately [five] inches long, [three] inches wide[,] and [one] inch thick.  The firearm was loaded with one bullet in the chamber.

"Other officers continued to pursue Colon, apprehending and arresting him shortly thereafter."

According to the defendant, Detective Delgado did not have "an objectively reasonable suspicion of criminal activity, based on specific and articulable facts" that would justify the seizure. Commonwealth v. Barros, 435 Mass. 171, 176 (2001), citing Commonwealth v. Stoute, 422 Mass. 782, 789 (1996). The defendant and the Commonwealth agree that the motion judge properly determined that the defendant was seized in the constitutional sense when Detective Delgado yelled at the defendant to stop. Commonwealth v. Mock, 54 Mass. App. Ct. 276, 278 (2002). See Grasso & McEvoy, Suppression Matters Under Massachusetts Law, § 4-3 (2013-2014 edition) (determination of the grounds of the stop is both "fact-specific and time-dependent"). Thus, the defendant's flight following the order to stop may not be factored into the determination of whether the seizure of the defendant was reasonable.

When Detective Delgado first saw the defendant, he was standing near four other men, one of whom was known to Detective Delgado because he had arrested him for narcotics and home invasion. The defendant walked away quickly and appeared nervous. They were in a high crime area. Detective Delgado observed a bulge under the defendant's shirt on his right hip, which, based on the detective's experience and training, was

consistent with carrying a firearm.  See Commonwealth v. King, 389 Mass. 233, 243 (1893).  Detective Delgado also saw the defendant adjust the bulge.  The defendant argues that, even assuming all of these factors, Detective Delgado did not have reasonable suspicion to believe that the firearm was illegal. Mere possession of a firearm does not, by itself, justify a stop.  See Commonwealth v. Alvarado, 423 Mass. 266, 271 (1996). See also Commonwealth v. DeJesus, 72 Mass. App. Ct. 117, 120 (2008) (no reason to believe that defendant was too young to possess firearm legally).  The Commonwealth responds that the defendant's nervous demeanor when he first saw the police arrive, his immediate and fast-paced departure from the area, the fact that he repeatedly looked back at Detective Delgado as he walked away, the bulge on his hip where firearms are carried, and his reaching towards the bulge as he fled, provided a reasonable suspicion based on the facts and the inferences which could reasonably be drawn therefrom, that the defendant was unlawfully carrying a firearm.  See Commonwealth v. Silva, 366 Mass. 402, 406 (1974).

Both the Commonwealth and the defendant rely on Commonwealth v. DePeiza, 449 Mass. 367 (2007), to support their arguments.  In DePeiza, the Supreme Judicial Court stated:

> "Although the question is a close one, we conclude that by
> the time the officers announced the patfrisk, they
> reasonably suspected that the defendant was committing the

crime of carrying an illegal firearm, and the stop was therefore justified.  This conclusion follows from the combination of the many factors . . . .  The police encountered the defendant shortly after midnight in a high crime neighborhood with increasing incidences of firearm violence.  He was walking with his right arm held stiff and straight against his body, which, based on the officers' training at the police academy, suggested he was carrying a concealed firearm.  While speaking with the officers the defendant appeared nervous, looking from left to right and shifting his feet, as if ready to run.  Finally, and most significantly, throughout the encounter the defendant repeatedly hid his right side from the officers' view, and when the officers finally glimpsed that side they noticed that his right jacket pocket appeared to hold a heavy object."

Id. at 371-372.

Relying on DePeiza, we have held that collective factors, including the officer's training and nine years' experience in the district, the history of firearms in the neighborhood, the late hour, the defendant's head movements, his continuous placement of his hand inside his pants, and his accelerating evasion of the police established reasonable suspicion of unlawful possession of a firearm.  See Commonwealth v. Jones-Pannell, 85 Mass. App. Ct. 390, 397 (2014), further appellate review granted, 469 Mass. 1106 (2014).  See also Commonwealth v. Franklin, 456 Mass. 818, 823 n.3 (2010) ("fact of concealment of . . . weapon . . . gives rise to . . . reasonable suspicion that weapon is being carried unlawfully); Commonwealth v. Powell, 459 Mass. 572, 578 (2011) (same).  The facts of this case support a

conclusion that Commonwealth v. DePeiza is controlling and the officer had reasonable suspicion to stop the defendant.

Judgments affirmed.